# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARCUS W.,

        Plaintiff,

    v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 23 CV 1936

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcus W. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's request for remand [7][1] is granted, defendant's motion for summary judgment [10] is denied, and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

## Background

On September 14, 2015, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of August 10, 2015. [6-1] 91. Plaintiff's claim was denied initially on December 10, 2015, and upon reconsideration on May 13, 2016. [*Id.*] Plaintiff requested a hearing, which was held on December 13, 2017 before administrative law judge (ALJ) Johnson. [6-1] 10–59, 91. On that day, plaintiff also amended his alleged onset date to September 16, 2014. [*Id.*] 242. On March 28, 2018, ALJ Johnson issued an unfavorable decision finding plaintiff not disabled from August 10, 2015, the alleged onset date, through the date of the decision. [*Id.*] 91–109. The Appeals Council denied review on February 7, 2019. [*Id.*] 1. Plaintiff appealed to the Northern District of Illinois. [6-2] 871–72. On November 18, 2019, the District Court granted defendant's agreed motion for reversal and remanded to the agency for further administrative proceedings. [*Id.*] 873–76. On May 7, 2020, the Appeals Council vacated the final decision and remanded to an ALJ for resolution of the following issue:

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [6], which refer to the page numbers in the bottom right corner of each page.

The hearing decision did not include an adequate evaluation of the opinion evidence. In reviewing the medical opinions of Dr. Kenney (Exhibit 1A), Dr. Bacalla (Exhibit 3A), Dr. Mehr (Exhibit 1A), Dr. Gilyot-Montgomery (Exhibit 3A), Dr. Palmer (Exhibit 7F), Dr. Skerchock (Exhibits 12F, 17F, 26F), and Dr. Hanusa (Exhibits 15F, 22F), the decision generally noted that the opinions were not fully consistent with the general pattern of evidence contained in the hearing level record (Decision, pages 13-15). This statement does not provide a sufficient basis to satisfy the Administrative Law Judge's duty to evaluate opinion evidence under 20 CFR 404.1527. As such, it is unclear whether the residual functional capacity in the hearing decision is supported by substantial evidence. Therefore, further evaluation of the medical opinions is warranted.

[*Id.*] 879–82. *See also* [*id.*] 888. A second hearing was held on August 26, 2020 before ALJ Johnson. [6-1] 797–810; [6-2] 811–70, 888. On December 24, 2020, ALJ Johnson issued an unfavorable decision finding plaintiff not disabled from September 16, 2014, the amended disability onset date, through December 31, 2019, the date last insured. [6-2] 888–920.

In the December 24, 2020 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the September 16, 2014 to December 31, 2019 period. At step two, the ALJ found that plaintiff has the following severe impairments: bilateral lattice degeneration with left eye retinal detachment requiring corrective eye surgeries, hearing loss, adjustment disorder with depressed features, major depressive disorder, bipolar disorder, and alcohol use disorder. The ALJ also found that plaintiff has a number of non-severe impairments. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In assessing the four areas of functioning that make up the paragraph B criteria, the ALJ found that plaintiff has mild limitations in understanding, remembering, or applying information and in adapting or managing oneself, and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: never climb ladders, ropes, or scaffolds; never be around unprotected heights and dangerous heavy moving machinery; not able to work in environments with very loud noise; able to understand, remember, and carry out simple, routine and repetitive instructions; not able to meet fast paced hourly production goals, but able to meet end of day goals; and able to tolerate occasional interaction with

supervisors, coworkers, and the public. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including packer, sorter, and warehouse worker. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act from September 16, 2014 through December 31, 2019.

The Appeals Council denied review on January 23, 2023, [6-1] 787–88, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

The Court reviews the ALJ's decision deferentially to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) the ALJ failed to comply with Social Security rules and regulations in her assessment of the medical opinions and (2) the mental RFC assessment failed to account for plaintiff's deficits in the ability to sustain the on-task or attendance requirements of full-time work. [7] 10–15. Throughout both of these sections, plaintiff also raises arguments that the ALJ erred in her credibility determination. [*Id.*] 11–12, 15.

The Court begins with the ALJ's evaluation of the opinion evidence. For claims filed before March 27, 2017, the "Treating Physician Rule" applies, under which a treating physician's opinion is entitled to controlling weight if the opinion is both well

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [17].

supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527; *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *Edgar W. v. O'Malley*, No. 15 C 7571, 2024 WL 965179, at *3 (N.D. Ill. Mar. 6, 2024). "Because a treating physician has 'greater familiarity with the claimant's condition and circumstances,' an ALJ can only discount a treating physician's opinions based on good reasons supported by substantial evidence in the record." *Carol Z. v. Kijakazi*, No. 22-cv-50024, 2023 WL 2561616, at *4 (N.D. Ill. Mar. 17, 2023) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)). "Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). "Rather, the ALJ [is] required to explicitly consider the details of the treatment relationship and explain the weight he was giving the opinion." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016); *John B. v. Kijakazi*, No. 20-cv-50137, 2023 WL 4762602, at *2 (N.D. Ill. July 26, 2023); *Wallace v. Colvin*, 193 F.Supp.3d 939, 946 (N.D. Ill. 2016). *See Campbell*, 627 F.3d at 308 ("Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion."). In assessing what weight a treating provider's opinion does merit, "[t]he regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion." *Edgar W.*, 2024 WL 965179, at *3; 20 C.F.R. § 404.1527. *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence.") (citation omitted). The regulations specifically state that ALJs "consider *all* of [these] factors in deciding the weight [to] give to any medical opinion." 20 C.F.R. § 404.1527 (emphasis added). *See Jeffers v. Astrue*, No. 09-C-6225, 2010 WL 4876726, at *13 (N.D. Ill. Nov. 19, 2010) ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [the Social Security regulations].") (alteration in original) (quoting SSR 96-2p, 1996 WL 374188, *4 (July 2, 1996)). Because plaintiff filed his claim on September 14, 2015, the ALJ was required to apply the treating physician rule in evaluating the opinion evidence.

Plaintiff first argues that the ALJ erred in her assessment of four opinions in the record proffered by Dr. Judith Skerchock, Ph.D., plaintiff's treating psychologist. [7] 11–12, 13. These opinions from Dr. Skerchock are contained in a July 16, 2016 letter, a July 23, 2017 mental RFC statement, a December 3, 2017 letter, and an August 10, 2020 letter. *See* [6-1] 616–18, 637–40, 773; [6-2] 1388–91. In assessing Dr. Skerchock's August 10, 2020 opinion and assigning it "little weight," the ALJ's decision provided the following:

> In a letter dated August 10, 2020, Dr. Judith Skerchock opined that the claimant could not bend over from the waist and sweep from side to side, due to his ocular disabilities (42F). The psychologist again noted that it

was against her office policy to release patient office notes. She discussed a history of claimant's physical impairments and procedures that he underwent. She reported that psychologically, the claimant was not able to return to competitive employment (42F). The undersigned gives Dr. Skerchock's opinion at 42F little weight because she is a psychologist and her opinion about the claimant's physical impairments is outside her expertise.

[6-2] 915. The ALJ was permitted to assign little weight to Dr. Skerchock's opinions on plaintiff's physical abilities based on the fact that Dr. Skerchock is a psychologist and not otherwise qualified to opine on physical impairments. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). But Dr. Skerchock's 2020 letter was not limited to an analysis of plaintiff's physical impairments. Rather, Dr. Skerchock also provided a narrative assessment of plaintiff's psychological difficulties and abilities. For example, Dr. Skerchock opined that plaintiff "struggles to find any sense of self-usefulness in his current life situation" and "is battling against falling into a significant depression." [6-2] 1389. She describes an "alcoholic bender" for which he was "hospitalized for detox" and lists "1–2 day drinking episodes" occurring in April and May 2018 and July, August, and November 2019. [*Id.*] Dr. Skerchock also referred to the June 2016 incident and plaintiff's "lack of judgement [sic] and impulsivity." [*Id.*] 1390. Dr. Skerchock opined that although plaintiff "is able to create interests for himself, he does not have the ability to follow-through with any of them" and described plaintiff's social difficulties. [*Id.*] 1389, 1390. Dr. Skerchock again diagnosed plaintiff with "Bipolar disorder, current episode depressed, mild" and "alcohol dependence, uncomplicated," stating that "the bipolar disorder primarily presents as depression, although periods of hypomanic thought processes are present." [*Id.*] 1390. And Dr. Skerchock opined that plaintiff's "mental capacity is lowered by his impulsiveness, loosened thought processes, hypomanic affect, and compromised short-term memory." [*Id.*] 1391. The ALJ's assessment of the weight to give the 2020 letter reduced these opinions to a single sentence that "psychologically, the claimant was not able to return to competitive employment (42F)." [6-2] 915. Earlier in the decision, the ALJ copied and pasted large chunks of Dr. Skerchock's 2020 letter opining on plaintiff's psychological impairments, [6-2] 897–98, yet did not return to these portions in assessing the weight to give the opinion and did not engage in any analysis of these opinions. "[A] summary is not a substitute for analysis." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024) (citing *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008)). It is not clear to the Court why the ALJ neglected to include discussion or analysis of the entirety of Dr. Skerchock's fourth and most recent opinion. Dr. Skerchock's 2020 letter states that it is a continuation of her 2016 and 2017 assessments, "from July, 2017–present[,]" and therefore represents a large portion of the relevant timeframe (September 16, 2014 through December 31, 2019). [6-2] 1388. "An ALJ may not selectively discuss portions

of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (quoting *Campbell*, 627 F.3d at 301).

Nor did the ALJ engage in a discussion of the regulatory factors when assessing Dr. Skerchock's 2020 opinion, instead assigning it "little weight" based only on one factor, *i.e.*, "the physician's specialty." As the Court previously noted, the other factors to consider are the length, nature, and extent of the treatment relationship; the frequency of examination; the types of tests performed; and the consistency and support for the physician's opinion. 20 C.F.R. § 404.1527. The ALJ's decision does not reflect an analysis of these factors. *Gerstner*, 879 F.3d at 263 (finding that "the ALJ still erred by assigning [the treating doctor's] opinions little weight without considering relevant regulatory factors"); *Meuser*, 838 F.3d at 912 ("The ALJ did not mention any 'regulatory factors' when evaluating Dr. Rhoton's opinion; the ALJ said only that the opinion merited 'little weight.'"); *Jeffers*, 2010 WL 4876726, at *13 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [the Social Security regulations]."); 20 C.F.R. § 404.1527 (stating that ALJs "consider all of [these] factors in deciding the weight [to] give to any medical opinion"). The ALJ made passing references to "the length, nature, and extent of the treatment relationship" and "the frequency of examination" by noting at points throughout the decision that plaintiff "reported that he sees Dr. Skerchock weekly," that Dr. Skerchock's July 2016 letter indicated that she had been seeing plaintiff "on a weekly basis for outpatient psychotherapy since late 2015," and that plaintiff had 51 therapy sessions with Dr. Skerchock between October 30, 2015 and July 23, 2017. [6-2] 896, 897, 913, 914. But the ALJ failed to evaluate this information in the context of assessing Dr. Skerchock's 2020 opinion and the ALJ did not articulate how, if at all, this factored into her determination of what weight to give the opinion. *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021) ("Generally acknowledging the regulatory factors is insufficient.").

In assessing Dr. Skerchock's 2020 opinion, the ALJ also did not articulate consideration of "the types of tests performed" or "consistency and support for the physician's opinion." The ALJ did mention these factors in relation to Dr. Skerchock's other three opinions, but the ALJ must assess each medical opinion individually and the Court cannot speculate as to how the ALJ's findings as to certain opinions might translate into the weight the ALJ would give a different opinion. Furthermore, plaintiff argues that the ALJ erred in evaluating these opinions as well. In giving Dr. Skerchock's opinions in her July 2016 letter, July 2017 mental RFC statement, and December 2017 letter "little weight," the ALJ stated the following:

> She did not provide her treatment notes, so there is nothing to compare her opinions to other than her conclusions. Her conclusions are not consistent with the other mental status exams in the file from the claimant's own psychiatrist, Dr. Hanusa, and the consultative

6

psychological evaluation. Dr. Skerchock's opinion is also not consistent with the claimant's activities as described above, including traveling, attending school, performing activities of daily living, and exercising.

[6-2] 915.

The ALJ's first statement relates to "support for the physician's opinion," suggesting that Dr. Skerchock's opinions should be given less weight because her treatment notes are not in the record. The ALJ acknowledged the absence of these treatment records throughout the decision,[3] noting that Dr. Skerchock reported that it is against her office policy to release patient office notes and that the record is therefore "missing all treatment chart notes from treating psychologist, Dr. Judith Skerchock[.]" [*Id.*] 897, 908. It is plaintiff's burden to prove his disability and he "bears the burden of submitting medical evidence establishing [his] impairments and [his] residual functional capacity." *Thorlton v. King*, 127 F.4th 1078, 1080–81 (7th Cir. 2025) (quoting *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011)). *See* 20 C.F.R. § 404.1512 (placing the "[r]esponsibility for evidence" on claimants). Defendant asserts that the ALJ properly "determined that Dr. Skerchock's refusal to submit treatment records rendered her opinions unsupported because 'there is nothing to compare her opinions to other than her conclusions.'" [11] 8–9 (quoting [6-2] 915). However, "the mere absence of detailed treatment notes, without more, is 'insufficient grounds for disbelieving the evidence of a qualified professional.'" *Brown*, 845 F.3d at 253 (quoting *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014)). After all, although the "claimant must present evidence of limitations affecting their capacity to work . . . [o]ftentimes a claimant can satisfy that burden by . . . asking their 'doctor to lay out in plain language exactly what it is that the claimant's condition prevents' them from doing[.]" *Thorlton*, 127 F.4th at 1081 (quoting *Punzio*, 630 F.3d at 712).

The ALJ's second statement relates to the "consistency" of Dr. Skerchock's opinions with the record as a whole. 20 C.F.R. § 404.1527(c)(4). The ALJ found that Dr. Skerchock's conclusions were not consistent with mental status exams in the file performed by Dr. Hanusa, plaintiff's psychiatrist responsible for medication management. Yet earlier in the decision, the ALJ identified reasons that Dr. Hanusa's treatment notes were less helpful, noting that plaintiff "received sporadic treatment from September 2015 to July 2020" with "only 15 visits during this 5-year time frame" and that "Dr. Hanusa's psychiatric notes reveal mostly subjective reports and contain very little information on objective clinical findings."[4] [6-2] 908. The ALJ

---

[3] At one point, the ALJ criticized plaintiff for failing to provide sufficient treatment records and relying instead on opinions: "The undersigned notes that the claimant's representative submitted many opinion statements in support of the claim. The undersigned, however, also notes that the claimant has the burden to provide the mental health notes, which would document objective clinical findings over a significant period of time, his response to treatment, any progression of his mental condition, and not just voluminous opinions, as noted below." [6-2] 909.

[4] *But see Gerstner*, 879 F.3d at 262 (stating that "all findings in psychiatric notes must be considered, even if they were based on the patient's own account of her mental symptoms"); *Wallace*, 193 F.Supp.3d

did not explain this apparent disconnect. Plaintiff also argues that such "reliance upon relatively normal brief mental status examinations is misguided, as such notations only describe how an individual presented at a particular appointment." [7] 11 (citing *Gerstner*, 879 F.3d at 261–62 ("Moreover, the affect and mood notes that the ALJ emphasized simply described how Gerstner presented *on the days of her appointments*. They were not general assessments.") (emphasis in original)). This is an especially important consideration in the context of claimants with bipolar disorder, as the Seventh Circuit has "often observed that bipolar disorder . . . is by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (collecting cases).[5] And although the ALJ's decision included portions of Dr. Hanusa's treatment notes that *do* appear to be more consistent with Dr. Skerchock's opinions, the ALJ did not acknowledge this in assessing the weight to give Dr. Skerchock's opinions. *See, e.g.*, [6-2] 898 ("On September 25, 2015, the claimant reported that he was sober, but when he got depressed, he relapsed."), 899 ("On July 18, 2017, the claimant reported that it was hard to stay away from depression and alcohol."), 899 ("He again said that he needed a sense of purpose. . . . A December 2, 2019 psychiatric note noted that the claimant was status post alcohol relapse."), 909 ("Dr. Hanusa's psychiatric notes also document some fluctuating mood at which time the claimant relapsed, a one-time incident in 2017 when he drank, took out his shotgun and was arrested; and occasional difficulty handling stressful situations, such as financial difficulties and family conflicts.").

Additionally, the ALJ found that Dr. Skerchock's conclusions were not consistent with the November 2015 consultative psychological evaluation performed by Dr. Kettering. [6-1] 595–98. The ALJ's decision summarized some of the findings of this exam and included the exam as part of the treatment notes in the record:

> As part of his claim for disability, he presented to Randy Kettering. Ph.D., for a consultative psychological examination on November 16, 2015 (9F). A mental status examination revealed that he had a euthymic mood and constricted affect, but he did not appear irritable (9F/3). He was able to correctly remember eight numbers forward and correctly remember six numbers when repeated backwards. As for his recent memory, he was only able to remember one of three words presented to him after a five-minute delay. As for his long-term memory, he was able

---

at 946 ("It is not clear, for example, what clinical or lab techniques the ALJ believed were needed to confirm a treating physician's opinion regarding a diagnosis of bipolar disorder. Indeed, psychological and psychiatric conditions are necessarily and largely diagnosed on the basis of subjective patient complaints.").

[5] *See also Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("Moreover, the ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("Many mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms.").

to remember his social security number. He was able to perform serial sevens with only committing one error. He was able to correctly perform double-digit addition and consistent and double-digit subtraction. However, he was inconsistent when performing single digit multiplication, but was consistently correct with simple division. He was diagnosed with adjustment disorder with depressive features (9F/4).

[6-2] 900, 909. *But see* [6-1] 597 ("He walked slowly and somewhat cautiously using his hands to help navigate the space. . . . His answers were clear and but [sic] a little over-inclusive and he had to be redirected to the questions asked on occasion."), 598 ("He exhibits strained and inconsistent judgment with some common social situations."). The ALJ noted that although "Dr. Kettering did not provide any other opinion," the ALJ "consider[ed] the exam results in [her] decision to support the mental residual functional capacity." [6-2] 912. Dr. Kettering's report noted that at the time of the exam, plaintiff had been referred to Dr. Skerchock "three weeks ago." [6-1] 596. The ALJ was permitted to observe that Dr. Skerchock's opinions were not consistent with the consultative psychological evaluation, as the regulations observe that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 CFR 404.1567(c)(4). But the ALJ did not provide any additional assessment as to how she considered this factor alongside the other regulatory factors in assigning weight to Dr. Skerchock's opinions. For example, the ALJ did not articulate why she found the consultative examination more persuasive than Dr. Skerchock's opinions even though the consultative examination was one 50-minute evaluation and Dr. Skerchock evaluated plaintiff on a weekly basis since October 30, 2015, providing a much greater longitudinal picture of the relevant time frame (September 16, 2014 through December 31, 2019). [6-1] 598, 616, 637. *See* 20 CFR 404.1567(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."); *id.* at 404.1567(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Although courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray*, 861 F. App'x at 105 (citing *Karr*, 989 F.3d at 512; *Gerstner*, 879 F.3d at 263). And the Court is not convinced that "the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors." *Id.* at 106. Rejecting a treating physician's opinion "without considering the regulatory factors" is "a reversible error in itself." *Deborah A. M. v. Saul*, No. 19 C 2380, 2019 WL 6893006, at *3 (N.D. Ill.

9

Dec. 18, 2019). *See Wallace*, 193 F.Supp.3d at 946 ("As for the second step of the treating-physician rule, the ALJ did not explicitly apply the checklist. In this Court's view, that failure alone is a ground for a remand.").[6]

Because the Court is remanding on this basis, it does not address plaintiff's other arguments. However, this should not be construed as a finding that the ALJ did or did not err in the other ways identified by plaintiff.

**Conclusion**

For the foregoing reasons, plaintiff's request for remand [7] is granted, the decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 8, 2025**

---

[6] Defendant does not argue that any error in the ALJ's evaluation is harmless and such an argument is therefore forfeited. *See James M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).